CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 0 6 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID F. SPRINKLE, | ) |
| Plaintiff, | ) Case No. 7:08CV00430 |
| v. | ) MEMORANDUM OPINION |
| EARL BARKSDALE, ET AL., | ) By: Glen E. Conrad |
| Defendants. | ) United States District Judge |

Plaintiff David F. Sprinkle, proceeding pro se, brings this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, Sprinkle alleges that his constitutional rights were violated in several respects while he was incarcerated at Dillwyn Correctional Center ("DWCC").[1] On June 30, 2009, the court heard oral arguments from the parties as to defendants' pending motions to dismiss and motion for summary judgment. Pursuant to discussions with the parties and upon review of the pleadings and the record, the court finds that Sprinkle's claims regarding the administration of his daily pain medication may go forward against three defendants. As to all other claims, however, the dispositive motions will be granted.

## Background

Sprinkle filed this complaint initially as a motion for temporary restraining order, asserting that he was being denied access to legal materials he needed to file a lawsuit about his medical problems. The court denied the motion, but construed the pleading as a civil rights complaint, pursuant to 42 U.S.C. § 1983. An order entered July 31, 2008 advised Sprinkle that his allegations were insufficient to state any claim actionable under § 1983, but granted him an opportunity to amend to provide specific details in support of his claims. His subsequent

---

[1] In February 2009, Sprinkle was released from prison and qualified to proceed in forma pauperis in prosecuting this case.

amendment, raising his current claims, was granted and the clerk's office mailed notice of waiver of service forms to the defendants on August 29, 2008 in care of the Office of the Attorney General.[2]

The defendants are represented by three separate counsel and have filed separate dispositive motions. Defendant Susan DiGiovanni, M.D. has filed a motion to dismiss. Defendants Dr. Cypress, Dr. Driscoll, Nurse Elko, Nurse Downs, and M. Sams have also filed a motion to dismiss. Defendants Barksdale, Mosley, Schilling, Ratcliff-Walker,[3] Booker, Mason, Smith, Stephens, Dent, and Harper have filed a motion for summary judgment. Sprinkle attempted to conduct discovery in response to these motions. The court granted a protective order as to those defendants who had filed motions to dismiss, as their motions must be decided on the pleadings. The remaining defendants argued that the discovery Sprinkle directed to them was overbroad and not necessary for his response to the issues raised in their motion for summary judgment. The court agreed and granted their protective order. Sprinkle responded to all the defendants' motions, making the matter ripe for disposition.

## Discussion

A motion to dismiss tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the complaint need not provide detailed factual allegations, plaintiff's allegations must state "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. Taking the allegations in the light most favorable to the plaintiff, they "must be enough to raise a right to relief above the speculative level." Id.

---

[2] One defendant, Nurse Hardy, did not waive service in this case and has never been served. As the court advised Sprinkle at the June 30, 2009 hearing, if he wishes to proceed against this defendant, he must provide the court with an address for her where the court can attempt to serve her with the complaint, pursuant to 28 U.S.C. § 1915(d).

[3] Sprinkle identified this defendant as "Ratliff-Walker," so the court's docket also uses this spelling. Defendants' motion lists her as "Ratcliff-Walker."

- 2 -

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### A. Problems with Pain Medication

David F. Sprinkle served three years in prison at various institutions operated by the Virginia Department of Corrections (VDOC).[4] He suffers from chronic pain stemming from hereditary polycystic kidney disorder and other health problems. According to Sprinkle, to address his pain, VDOC doctors had prescribed a narcotic medication, Lortab, to be taken four times per day. He arrived at DWCC in January 2007 and was immediately screened in the medical department regarding his medication issues. Although most inmates taking narcotic medications are required to remain in the medical unit, officials arranged for Sprinkle to be housed in the general population and receive his doses of Lortab during the periodic pill calls scheduled four times each day.

Sprinkle complains that on "numerous" occasions, DWCC nurses gave him inadequate doses of his medication or even the wrong medication. Based on his review of his pill charts and

---

[4] Sprinkle's pro se pleadings are difficult to follow, and he relies on attached documents to provide details about his claims, rather than spelling them out in the pleading itself. The description of background facts is a compilation of allegations from his pleadings, facts drawn from his attachments, and additional details he described during the June 30, 2009 hearing.

the frequency at which his medication had to be reordered, he also alleges that some of his medication was stolen. He explained during arguments that for some time, the medication was delivered to him already crushed, so that he could not be sure the medication or the dosage was correct. On one occasion, the pill was not completely crushed and he was able to see that it had a gel coating, unlike his prescribed medication. When he complained, Nurse Downs gave him a new cup containing the correct medication and dosage. Once Head Nurse Elko learned of Sprinkle's complaints, she required the nurses to show Sprinkle his medication before it was crushed so that he could be sure that the medication and dosage were correct. Sprinkle also alleges that on at least one occasion, the defendant nurses allowed the prescription for his pain medication to run out, leaving him without any of the medication for 24 hours.

Sprinkle also complains about periods during which the delivery times for his medication varied; sometimes he waited eight to twelve hours between doses.[5] The problem with the timing of Sprinkle's medication dosages relates to some extent to a schedule change at DWCC; instead of conducting four pill calls per day, the institution went to three times per day. The reason for this change and the date when it took effect are not clear from the parties' submissions. Sometime after the change, Sprinkle allegedly complained to DWCC physician Stanley Cypress that the medication schedule provided was not controlling his pain. Cypress allegedly said to Sprinkle, "You may need an increase, but you'll never get it from me." Sprinkle asserts that according to doctors who have treated his kidney condition in the past, failure to control his chronic pain can aggravate his kidney problem and lead to ischemic brain disease. Sprinkle claims that before he entered the VDOC, he had never been diagnosed with ischemic brain disease, but tests taken during his incarceration indicated that he now has this condition.

---

[5] In September 2008, Sprinkle filed a motion for temporary restraining order, complaining that on September 2, 2008, he had gone from 9:00 p.m. until 8:35 a.m. without pain medication. Although the court ultimately denied any interlocutory injunctive relief, the court considers Sprinkle's pleadings related to the TRO motion to be amendments to his complaint regarding his problems with his pain medication.
  Sprinkle also mentions a request for "medical shoes" in one pleading related to the TRO; the court denied his later amendment attempting to bring a claim related to this problem. (Dkt. Nos. 75, 85)

To prove that medical treatment he received while a prisoner amounted to a violation of the Eighth Amendment prohibition against cruel and unusual punishment, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) (convicted felon). Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106. First, the prisoner must demonstrate a medical need serious enough to give rise to a constitutional claim. "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir.1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1974) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and that he disregarded the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The United States Court of Appeals for the Fourth Circuit has held that to bring a medical treatment claim against supervisory or other non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Prison personnel may rely on the opinion of the senior medical staff as to the proper course of treatment. Id. at 855.

Applying these principles to Sprinkle's claims regarding his pain medication, the court finds that the claims must be dismissed as to some of the defendants. In his first claim, Sprinkle sues VDOC Health Service Director; Harvard Stephens, M.D., the VDOC Chief Physician; Dr. Cypress, the doctor at DWCC; and Dr. DiGiovanni, a nephrologist at Virginia Commonwealth

University ("VCU") who consulted with the jail physician about Sprinkle's kidney problems. Sprinkle asserts that through conversations, letters, or grievances, he informed all of these individuals of the problems he was having at DWCC, getting appropriate pain relief: his allegations of stolen medication, altered dosages, incorrect medication, and the changed dosing schedule.[6] Sprinkle asserts that because these defendants knew of, but did not alleviate the problems with his pain medication, they should be liable under § 1983.[7]

Schilling and Stephens have filed a motion for summary judgment, supported by affidavits in which each of them states that he has no personal involvement in deciding the appropriate course of treatment for inmates' medical conditions or in scheduling the number of pill calls to be conducted at each VDOC institution Schilling is administrator of the VDOC health services, but is not a doctor himself and relies on the judgment of the institutional physician as to determinations about proper treatment for a specific inmate. Schilling learned of Sprinkle's complaints regarding his pain medication through his role in addressing Level II grievance appeals. As to each instance about which Sprinkle grieved, Schilling determined the appeals to be unfounded after his review of records indicated that Sprinkle's complaints had been investigated and addressed at the institutional level by the medical professionals who were

---

[6] Sprinkle asserts that DWCC's decision to offer only three pill calls per day, instead of the four pill calls as scheduled at other VDOC institutions, violated his right to equal protection of the laws under the Fourteenth Amendment. However, different treatment of inmates housed at different institutions does not give rise to constitutional proportions. See, e.g., Moss v. Clark, 886 F.2d 686, 690 (4th Cir.1989) (finding no equal protection violation where inmates sentenced in D.C. courts and housed in federal prisons could not earn good time credit at as favorable a rate as inmates sentenced in D.C. courts and housed in D.C. prisons); Strickler v. Waters, 989 F.2d 1375 (4th Cir.1993) (finding no equal protection violation where inmate with sentence to serve in state prison facility spent long period in local jail with less favorable conditions, specifically, overcrowding, inadequate exercise facilities, poor climatological conditions, and an inadequate library with restricted access). As Sprinkle's allegations about the different pill call schedule at DWCC thus do not support an equal protection claim, the court will grant all defendants' motions as to that portion of his complaint.

[7] Sprinkle asserts that once the defendants were informed of his allegations that his narcotic medications were being stolen, they had a duty under Virginia law to report these thefts to the appropriate authorities. These alleged violations of state law do not give rise to any claim independently actionable under § 1983, which authorizes vindication of federal rights. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990). Furthermore, pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over any such state law claim.

treating him. Schilling rightfully relied on the treating physicians to determine whether Sprinkle was receiving medication in the dosage and at the frequency that would best address his chronic pain in the prison setting. Miltier, 896 F.2d at 854. Sprinkle fails to allege facts indicating that Schilling took any action to interfere with or prevent his access to the medical care prescribed by his treating doctors. Thus, the court finds no genuine issue of material fact in dispute and grants judgment for Schilling as a matter of law.

Stephens, as the VDOC's chief physician, also relies on the professional judgments of the institutional physician who has met personally with and evaluated the inmate to make appropriate decisions about that inmate's condition and course of treatment. Stephens never personally provided medical care to Sprinkle. On October 15, 2007, however, he responded to a letter from Sprinkle about his pain medication. He informed Sprinkle that if his four daily doses of Lortab (75/500 mg) were not effective, he should file a sick call request and Dr. Cypress, as the institutional physician, would evaluate his needs. Like Schilling, Stevens could rightfully rely on the medical professionals treating Sprinkle to make decisions about medication and dosage, and Sprinkle fails to present any material facts in dispute as to whether this defendant interfered with his access to medical treatment. Thus, the court finds no genuine issue of material fact in dispute and grants judgment for Stephens as a matter of law.

The evidence in the record indicates that Dr. DiGiovanni evaluated Sprinkle's kidney condition in person and via tele-med visits with him at the prison. She offered his treating physician her professional diagnoses of Sprinkle's condition and recommended treatment for his symptoms.[8] Sprinkle presents no evidence, however, that she had any personal involvement in or responsibility for providing treatment to him. While he may wish to offer her diagnoses and treatment recommendations as evidence in support of his claims against other defendants, he fails

---

[8] To the extent that Sprinkle may be alleging that Dr. DiGiovanni recommended prescribing medications that were contraindicated, given his medical history, he has no § 1983 claim against her, as such allegations of medical negligence do not support a finding of deliberate indifference as required to prove an Eighth Amendment claim regarding medical care. Estelle, 429 U.S. at 105-106.

to allege facts on which she could be held personally liable under § 1983 for the alleged problems in administering his pain medication. The court will grant her motion to dismiss accordingly.

Sprinkle alleges that Dr. Cypress knew of the problems that Sprinkle was having with his dosages of pain medication being stolen, altered, or dispensed too infrequently, but refused to take reasonable measures to alleviate these problems. He also alleges that Dr. Cypress failed to take prompt and reasonable measures to provide for adequate pain relief for Sprinkle on a three-pill-call schedule. The court finds that these allegations state a possible deliberate indifference claim against Dr. Cypress and denies the motion to dismiss accordingly as to this claim.

In his second claim, Sprinkle sues three nurses: Elko, Downs, and Hardy. He alleges that on "numerous" occasions, Downs and Hardy gave him less of his medication than was prescribed or gave him an alternative medication. He implies that they were making these changes to his medication dosages because some of the prescribed medication was being stolen. He also alleges that the nurses let his prescription run out, leaving him without pain medication for 24 hours on at least one occasion. If he could prove that one or both of these nurses was knowingly not giving him the correct dosage of his prescribed pain medication or knowingly delayed ordering a refill of his prescription, he would state a claim of deliberate indifference to his serious medical need for pain relief. Accordingly, the court will deny the motion to dismiss as to Nurse Downs.

Sprinkle does not allege that Head Nurse Elko ever dispensed medication to him or that she was responsible for ensuring that prescriptions did not run out before being reordered. Moreover, when he informed Elko of the problem with his medication being reduced or changed by the nurses who delivered it to him, she took reasonable precautions to alleviate the risk in the future by ordering the nurses to allow Sprinkle to verify the medication and dose when it was delivered to him. These allegations do not support any finding of deliberate indifference by Elko. Estelle, 429 U.S. at 104-105. To the extent that Sprinkle was not satisfied with Elko's reaction to his grievance, he states no constitutional claim, because inmates have no constitutional right to

a grievance procedure in the first place.[9] Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). He also has no constitutional right to an internal investigation of his accusations. Accordingly, the court will grant the motion to dismiss as to this defendant.

### B. Dental Care

At some point while Sprinkle was incarcerated at DWCC, one or more of his dental fillings fell out, making it painful for him to eat. He filed a request to see the dentist, but did not actually see a dentist until after his transfer to another institution. He admitted at the arguments on June 30, 2009 that he had never developed any abscess or infection as a result of the lost fillings and that a dentist at the new institution had repaired the problem without incident. The alleged facts do not indicate that the delay in treatment aggravated his condition. Moreover, it is clear from his other medical claims that he received prescription pain medication throughout the period while he was awaiting a dental exam. As he thus demonstrates no deliberate indifference and no serious medical need for quicker access to a dentist, he states no constitutional claim regarding his dental problem. Accordingly, the court will grant the defendants' motions as to this claim.[10]

### C. Access to Courts

Sprinkle claims that several of the defendants were involved in denying him free photocopies that he requested in connection with this civil rights action, another civil rights case previously filed in another court, and an appeal. He was told that because he had incurred a debt of over $50.00 in photocopying costs, he would not receive any additional free copies without a court order. He asserts that he was "hindered" in prosecuting these cases by the lack of photocopies. He also alleges that Defendant Booker, when she did copy legal documents for him, kept copies.

---

[9] Sprinkle's allegations that Elko violated state law by failing to report his missing medication to state authorities does not give rise to any constitutional claim for reasons already stated.

[10] The defendants named to this claim are Barksdale, Sams, Driskoll, and Schilling.

When an inmate claims that prison officials' actions or policies have interfered to an unconstitutional extent with his ability to access the courts, he must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions. Lewis v. Casey, 518 U.S. 343, 351-54 (1996). Unless he demonstrates actual injury to his litigation, he fails to state a constitutional claim. Id.

Sprinkle fails to show any such specific injury. He does not explain what kinds of documents he wanted copied or why these documents were necessary to his litigation efforts in any of the cases he mentions. Likewise, he does not indicate that Booker's actions caused any injury to his litigation efforts. Accordingly, the court will grant defendants' motions as to Sprinkle's access to courts claim.[11]

### D. Investigators' Threats

Sprinkle asked the special investigations unit ("SIU"), including Defendants Smith, Harper, and Dent, to investigate the theft of Sprinkle's narcotic pain medication. In response, he received a letter informing him that the alleged thefts were not a matter in which the SIU would become involved. Sprinkle also complains about the way he was treated by the investigators after he attempted to report an incident of excessive force that he witnessed, in which officers allegedly broke another inmate's arm. Sprinkle alleges that the investigators were slow to begin the investigation into his complaints and threatened to prosecute him for lying about the incident. No prosecution ensued, however.

These allegations do not give rise to any constitutional claim. First, as stated, inmates have no constitutional right to demand an investigation of prison operations. Second, mere verbal threats from officers do not violate an inmate's constitutional rights. Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (finding that sheriff's idle threat to hang plaintiff did not state constitutional claim). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty

---

[11] The defendants named to this claim are Booker, Ratcliff-Walker, and Mason.

interest. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). The court will grant defendants' motion for summary judgment as to this claim.[12]

### E. Medication during Transport

Sprinkle sues Defendants Mosley and Mason because they informed him that pursuant to prison policy, he could not take his narcotic pain medication with him during a March 6, 2008 trip to see his kidney specialist in Richmond. Defendants explain that transport officers are not authorized to dispense medication to inmates and that allowing inmates to carry their own narcotics with them in the transport van would create a risk that other inmates in the van would obtain and ingest drugs not prescribed for them. When he learned that he could not take his medication with him, Sprinkle refused to be transported that day; officers rescheduled his doctor visit, and he does not allege suffering any adverse effects from the delay. Thereafter, prison officials arranged to transport Sprinkle to visit his specialist on days when other inmates were not being transported, so that he could get back to DWCC in time for his next dose of pain medication.

These allegations do not support a finding of deliberate indifference to a serious medical need so as to state a constitutional claim. Estelle, 429 U.S. at 104-105. As Sprinkle himself decided not to be transported on March 6, 2008, the defendants' actions and policy decisions did not cause him harm. Moreover, he admits that he was taken later to see the specialist and officials adjusted the transport schedule to accommodate his need for pain relief. The court will grant defendants' motion for summary judgment as to this claim.[13]

### Conclusion

For the stated reasons, the court concludes that only one group of claims needs further development in this litigation: Sprinkle's claim that Dr. Cypress, Nurse Downs, and Nurse Hardy interfered with his receipt of medication to treat his chronic pain. Therefore, the court will

---

[12] The defendants named to this claim are Harper, Dent, and Smith.

[13] The defendants named to this claim are Mosley and Mason.

- 11 -

Case 7:08-cv-00430-GEC-mfu    Document 123    Filed 07/06/09    Page 11 of 12    Pageid#: 759

deny the motion to dismiss as to Dr. Cypress and Nurse Downs and will attempt to accomplish service on Nurse Hardy, once plaintiff provides an address for her. Defendants' motions to dismiss will be granted as to all other claims and defendants. The court will grant the motion for summary judgment as to all movants; however, Warden Barksdale will remain a party for purposes of discovery. The court will address specific discovery matters by separate order.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendant.

ENTER: This __6th__ day of July, 2009.

_____
United States District Judge