CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 30 2009

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DAVID F. SPRINKLE,

    Plaintiff,

v.

EARL BARKSDALE, ET AL.,

    Defendants.

Case No. 7:08CV00430

MEMORANDUM OPINION

By: Glen E. Conrad
United States District Judge

This civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343, alleges, among other things, that while Plaintiff David Sprinkle was incarcerated at Dillwyn Correctional Center ("DWCC"),[1] the defendant medical staff members failed to provide him with adequate pain medication to relieve his pain from polycystic kidney disease and other health problems. The motion for summary judgment filed by Stanley Cypress, M.D., and Jill Downes, L.P.N., is now ripe for decision. Upon review of the record, the court concludes that the motion for summary judgment must be granted and that all claims against another defendant, Nurse Hardy, must be summarily dismissed, pursuant to 28 U.S.C. § 1915A(e)(2).[2]

## I. Background

### A. Procedural History

In his initial complaint as amended, Sprinkle raised numerous claims concerning conditions and events at DWCC, arguing that over a dozen individual officials there had violated his constitutional rights in various ways. The "medical" defendants, including Dr. Cypress and

---

[1] In February 2009, Sprinkle was released from prison and qualified to proceed in forma pauperis in prosecuting this case.

[2] Pursuant to §1915(e)(2), the court may dismiss a civil action filed in forma pauperis at any time if the court determines that the claims are frivolous or malicious or that they fail to state a claim on which relief may be granted.

Nurse Downes, filed motions to dismiss, while other "nonmedical" defendants filed a motion for summary judgment. Sprinkle then engaged in discovery. On June 30, 2009, the court conducted a hearing in this case to resolve discovery matters and hear argument from the parties regarding pending dispositive motions. By this time, Sprinkle had been released from prison and attended the hearing in person to explain his claims and discovery concerns to the court. After the hearing, the court dismissed or granted summary judgment as to many defendants and claims, but denied the motion to dismiss as to Dr. Cypress and Nurse Downes.[3] The court determined that only two sets of claims against these defendants required further development in this litigation, as follows:

1. Sprinkle alleges that Dr. Cypress knew of the problems that Sprinkle was having with his dosages of pain medication being stolen, altered, or dispensed too infrequently, but refused to take reasonable measures to alleviate these problems. He also alleges that Dr. Cypress failed to take prompt and reasonable measures to provide for adequate pain relief for Sprinkle on a three-pill-call schedule.

2. Sprinkle alleges that on "numerous" occasions, Downs and Hardy gave him less of his medication than was prescribed or gave him an alternative medication. He implies that they were making these changes to his medication dosages because some of the prescribed medication was being stolen. He also alleges that the nurses let his prescription run out, leaving him without pain medication for 24 hours on at least one occasion.

Defendants Cypress and Downes then filed their motion for summary judgment. The court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned plaintiff that judgment might be granted for the defendants if he did not respond to the motion by filing affidavits or other documents contradicting their evidence or otherwise explaining his claims. The plaintiff responded, indicating that he wished to proceed with the action and asking for court-appointed counsel. The court denied the motion for counsel,

---

[3] The court retained Warden Barksdale as a defendant only for discovery purposes. By order entered July 6, 2009, the court lifted previously imposed protective orders as to discovery, granted Sprinkle an opportunity to pose an interrogatory to Warden Barksdale about the change to DWCC's pill call schedule and directed defendants to provide Sprinkle with copies of medical records. All other motions to compel additional discovery the court denied. The court also assisted Sprinkle in obtaining an address for Nurse Hardy, and she returned an executed waiver of service in November 2009.

and plaintiff filed no further response to the motion for summary judgment. As the time allotted for his response has long since passed, however, the motion is ripe for decision.

## B. Defendants' Motion for Summary Judgment

Defendants Cypress and Downes offer the following evidence regarding the course of treatment provided to Sprinkle during his incarceration at DWCC. When Sprinkle arrived at DWCC in January 2007, the medical staff noted that he had a history of polycystic kidney disease and a fused left ankle. Before his transfer, he had been taking two pain medications: Lortab 5mg/500 mg (a combination of 5 mg hydrocodone and 500 mg acetaminophen, equivalent to Hydrocodone/APAP 5/500 or Vicodin) as needed up to four times per day; and Phenylgesic (a Percogesic equivalent). At DWCC, Sprinkle was continued on these same medications. For a time after his arrival, he was monitored in the medical unit because of his narcotic medication. Nurses' notes indicate that although he was observed talking and walking normally, he was almost constantly seeking pain medication. On January 24, 2007, Sprinkle was discharged to the general population and issued a bottom bunk pass.

As the physician for DWCC, Dr. Cypress worked at the prison some days almost every week while Sprinkle was there. When Dr. Cypress met with Sprinkle on February 8, 2007, the inmate complained of kidney pain. Dr. DiGiovanni, the specialist from VCU, had previously recommended that Sprinkle have his kidney cysts punctured and drained for pain relief. Dr. Cypress tried discussing with Sprinkle Dr. DiGiovanni's recommendation to drain the cysts, but Sprinkle would only talk about wanting more pain medication. Dr. Cypress renewed Sprinkle's Lortab prescription and continued to do so as long as Sprinkle remained at DWCC.

Dr. DiGiovanni conducted a telemedicine consultation with Sprinkle on April 6, 2007. The nephrologist recommended continuation of current medications, although she noted:

"establish adequate pain control—still not getting relief."[4] On April 28, 2007, Dr. Cypress increased Sprinkle's pain medication to Lortab 7.5 mg/ 500 mg, four times a day.[5]

Dr. Cypress examined Sprinkle on May 29, 2007 for complaints of neck pain. Dr. Cypress noted that the inmate's neck was supple, and the doctor saw no reason for the complaint. Sprinkle's abdomen was also soft and nontender. Dr. Cypress continued to encourage Sprinkle to agree to have his renal cysts aspirated.

Sprinkle had another telemedicine consultation with Dr. DiGiovanni on August 3, 2007. She determined that Sprinkle's renal function was stable and recommended continuing his medications.[6]

Dr. Cypress examined Sprinkle on October 19, 2007. Sprinkle reported that he had experienced an episode of chills, fever, and side pain, which caused the doctor to suspect a kidney infection. He ordered a urinalysis, consulted with Dr. DiGiovanni, and followed her recommendations, including putting Sprinkle on Cipro, an antibiotic.

In late November or early December 2007, because of an inmate having escaped from DWCC, the administration of DWCC changed the number of pill calls from four to three, in order to accommodate the timing of head counts and other security requirements. Dr. Cypress had no role in making this decision and had no control over it. In order to continue Sprinkle on a pain medication regimen that, in Dr. Cypress' medical judgment, would control pain as well as previously, Dr. Cypress ordered that instead of giving Sprinkle one tablet of Lortab 7.5 mg/ 500 mg four times a day, the nurses should give him one and a half tablets of Lortab 7.5 mg/ 500 mg in the morning and in the evening and one tablet in the middle of the day.

---

[4] At this time, Dr. DiGiovanni recommended that Sprinkle's cholesterol levels should be addressed with prescription of a "statin." Accordingly, Dr. Cypress prescribed Lipitor on April 28, 2007.

[5] Nursing notes from late March and early April 2007 indicate that Sprinkle was demanding to have his pain medication increased to Lortab 10 mg/ 500 mg, as he claimed that doctors had prescribed this dosage to him before his incarceration.

[6] Dr. DiGiovanni also diagnosed Sprinkle as having a heart murmur and recommended that he undergo an echocardiogram at VCU, which he did on September 5, 2007.

Sprinkle has complained generally about his medication running out on occasion. Throughout Sprinkle's incarceration, based on Sprinkle's report of pain, Dr. Cypress renewed his Lortab prescription for successive 30-day periods whenever the nursing staff informed Dr. Cypress that Sprinkle needed a renewal.[7] The doctor had no other way to know when a prescription renewal was needed, as he was not responsible for communicating with the pharmacy, obtaining the medications, or dispensing the medications to inmates. Once the doctor ordered the renewal, verbally or in writing, the nursing staff, and not Dr. Cypress, was responsible for communicating the prescription renewal to the pharmacy and obtaining the prescribed medication from the pharmacy. A head nurse at DWCC, and not Dr. Cypress, supervises the nursing staff.

Sprinkle specifically alleges that on October 29-30, 2007, his prescription ran out, and he did not receive his medication for 24 hours.[8] At that time, Nurse Downes had not yet begun working at DWCC. Also, as a night shift nurse, she would not typically have been the nurse responsible for communicating a physician's renewal of a prescription to the pharmacy. Nurse Downes denies that she ever belatedly notified the physician that Sprinkle's medication needed to be renewed or that she ever belatedly relayed a prescription renewal to the pharmacy. She denies that she took any action which would have contributed to Sprinkle allegedly having his medication run out before refill medication arrived.

Dr. Cypress examined Sprinkle again on February 8, 2008 for his complaint that he had experienced blood in his urine, dizziness, and flu-like symptoms.[9] Dr. Cypress ordered a

---

[7] This 30-day prescription period is dictated by the fact that Lortab, as a narcotic, is a controlled substance.

[8] A Level II grievance response, dated December 19, 2007, which Sprinkle submitted among his stack of unnumbered exhibits, indicates that on this occasion in October 2007, DWCC nurses submitted an approved renewal for Sprinkle's medication before it ran out, but a delay in filling the medication occurred at the pharmacy.

[9] After Sprinkle's December 7, 2007 telemedicine consultation with Dr. DiGiovanni, Dr. Cypress followed her recommendation to increase the dosage of Nifedipine, a medication used to treat hypertension and angina (heart pain).

urinalysis, prescribed Cipro, and discontinued Sprinkle's prescription for Phenylgesic, another pain medication, to make sure that it was not aggravating the inmate's condition.

Dr. Giovanni conducted another telemedicine consultation with Sprinkle on February 15, 2008, which Dr. Cypress also attended. Dr. DiGiovanni first recommended a medication change for treatment of Sprinkle's hypertension and angina, which Dr. Cypress followed. Then, Dr. DiGiovanni recommended that Sprinkle have a sonogram to assess the size of his kidney cysts. Neither Dr. DiGiovanni's notes nor Dr. Cypress' notes regarding this consultation indicate that Sprinkle complained about his pain during this consultation. Sprinkle was scheduled to have a sonogram of his kidneys at VCU on March 6, 2008, but he refused to go.

Sprinkle has alleged generally that nurses gave him improper, altered, or incorrect medication numerous times at DWCC. Specifically, he alleges that on March 25, 2008, Nurse Downes gave him the wrong medication at first, but then exchanged it for the correct Lortab dosage after he complained. Medical records indicate that Nurse Downes was not the nurse who gave Sprinkle his medication on March 25, 2008, and the initials on the Medical Administration Record ("MAR") are not hers. During this period, she was working the night shift and rarely did pill calls.

Defendants also offer evidence that because Lortab is a narcotic, it is kept in a special locked cabinet and is subject to special procedures as a controlled medication. Among other procedures, once each shift the controlled medications are counted by a nurse from the outgoing shift and a nurse from the incoming shift to make sure that the quantity started with for each inmate, the quantity given during the shift, and the quantity remaining at the end of the shift add up correctly. The controlled medications count sheet for Sprinkle's Lortab for March 25, 2008 reflects that Sprinkle was given that medication as prescribed that day and that the amount of Lortab remaining was correct.

Nurse Downes denies that she ever altered or stole Sprinkle's medication, gave him the wrong medication or a smaller dosage than prescribed, or delayed giving him his medication.

Neither Dr. Cypress nor Nurse Downes has any knowledge that any of the nursing staff stole, altered, or dispensed other than as prescribed any of Sprinkle's medications.

On April 4, 2008, Dr. Cypress met with Sprinkle after a urinalysis showed some blood in his urine. The doctor consulted with Dr. DiGiovanni, who recommended that Sprinkle have a sonogram of his kidneys as soon as possible; she did not recommend any change in treatment.

Sprinkle had a telemedicine consultation with Dr. DiGiovanni on May 2, 2008. She recommended that Sprinkle have his blood pressure checked every two weeks, which Dr. Cypress ordered, noted that Sprinkle complained primarily of ankle pain, and did not recommend any change in his medications.

On May 9, 2008, Sprinkle underwent a sonogram of his kidneys at VCU. The radiology report stated that Sprinkle's kidney cysts had not significantly changed when compared to the earlier study done in 2006 and that there was no significant tenderness bilaterally.

Dr. Cypress examined Sprinkle on June 5, 2008 related to his complaints of a rash on his face. Dr. Cypress believed the rash to be a fungal infection and gave him an anti-fungal cream. The doctor also noted that Sprinkle's neck was supple and that his abdomen was soft and noted no pain.

A nurse informed Dr. Cypress on August 16, 2008 that Sprinkle reported not being able to void since the night before and that his abdomen was firm, his skin was hot to the touch although his temperature was only 99.6 degrees, and he complained of discomfort in the bladder area. Dr. Cypress ordered that officers take Sprinkle to the emergency room at VCU. Sprinkle returned from VCU that day with no new findings or orders.[10]

On August 29 and September 2, 2008, Sprinkle complained to nurses of back and side pain and wanted Tylenol. On September 3, 2008, a nurse paged Dr. Cypress, who increased

---

[10] On August 17, 2008, Dr. Cypress also noted a referral to the surgical clinic for evaluation of skin growths on Sprinkle's chest. On October 28, 2008, Sprinkle was evaluated at VCU, where a specialist reported that the growths could be excised. Given the past medical history Sprinkle reported, however, the specialist recommended that he return in six months.

Sprinkle's prescription for Lortab to 10 mg/ 500 mg and authorized an extra-strength Tylenol for Sprinkle at that time. On September 4, 2008, after a nurse reported that Sprinkle was complaining of pain in the evenings, Dr. Cypress verbally ordered that Sprinkle could be given Tylenol 500 mg at night as needed.[11]

Dr. Cypress explains in his affidavit that the pain a person experiences is subjective and typically lacking in scientific indicators. As such, in making treatment decisions, the doctor had to weigh Sprinkle's reports of pain with other factors. In his medical judgment, the doctor had to determine the extent to which the patient was experiencing actual physical pain—for which pain medication could provide relief and was medically appropriate—or was seeking pain medication for other reasons, such as addiction. Lortab is a potentially addictive narcotic. In addition, Dr. Cypress had to weigh the potential side effects of the medication and dosages. Dr. Cypress opines that Sprinkle's desire for more pain medication was not due to his actual experience of pain. Nevertheless, Dr. Cypress states that throughout his treatment of Sprinkle, he did his best to work with Sprinkle regarding his pain medication and his subjective reports of pain. Dr. Cypress ordered the increase in the Lortab prescription and added Tylenol, in part, because he had discontinued Sprinkle's other pain medication when the inmate had blood in his urine. Based on his medical judgment, Dr. Cypress did not believe at any time during Sprinkle's incarceration at DWCC that there was any medical reason for Sprinkle to be prescribed more pain medication that Dr. Cypress was prescribing for him.

Nurses examined Sprinkle on October 7, 2008 on an emergency basis after he reported feeling funny, like he had years earlier when he said he experienced what he called a mini-stroke.[12] He would not stay in the medical unit, however. Dr. Cypress examined Sprinkle on

---

[11] On September 22, 2008, Dr. Cypress examined Sprinkle related to his complaints of back and ankle pain. Dr. Cypress noted that Sprinkle's abdomen was soft and noted no tenderness or complaint of pain in that area.

[12] Sprinkle refers to the October 7, 2008 episode as an "ischemic brain attack" and complains that he should have been sent to the emergency room.

October 9, 2008, and ordered a CT scan of his brain based on the inmate's reports of headaches and dizziness. The doctor noted that Sprinkle was able to ambulate well and reported no tenderness in his abdominal area or other problems. Treatment notes indicate that Sprinkle again reported to a nurse on October 14, 2008 that he had experienced a stroke.

Sprinkle underwent a CT scan of his head on October 15, 2008 at the University of Virginia ("UVA") Radiology Department. The CT scan report noted nothing significant and nothing indicating a stroke. Records indicated that Sprinkle had been diagnosed with small vessel ischemic disease of the brain at least as early as November 2006, before his January 2007 transfer to DWCC. Dr. Cypress states, based on the UVA radiology report of October 15, 2008, that no aspect of the medical treatment Sprinkle received at DWCC either caused or worsened Sprinkle's condition in this regard.

In late November 2008, Sprinkle was transferred from DWCC. Dr. Cypress states his medical opinion that nothing in Sprinkle's treatment at DWCC caused or worsened his kidney disease or any of his other medical problems. Dr. Cypress also states that at all times, he made the best medical judgments he could in order to provide medically appropriate pain management for Sprinkle.

### C. Plaintiff's Evidence

Sprinkle filed detailed responses to the parties' previous dispositive motions, including numerous attachments. In response to the current summary judgment motion, however, he offers nothing further. In light of his pro se status, the court has nevertheless reviewed all of the unnumbered documents that Sprinkle has submitted in this litigation, including copies from his medical record, many informal complaints and grievances, and officials' responses.

Sprinkle submits medical records from May, July and August 2005 in which doctors in Bedford, Virginia prescribed Lortab 10 mg/500 mg every six hours for his pain.[13] He also offers

---

[13] Sprinkle also presents evidence that after his transfer away from DWCC in November 2008, the physician at the new prison facility, Dr. Ohai, determined that Sprinkle had no medical need for pain medications and discontinued his Lortab prescription altogether. Medical records Sprinkle submits from

documentation of Dr. DiGiovanni's recommendations that he "need[ed] adequate pain control" and that his medications should not be allowed to "run out."

In support of his claim that nurses were stealing his Lortab and giving him incorrect doses or other medications, Sprinkle refers to the "pill charts," which the court construes to be the medication administration record ("MAR"). Defendants have submitted copies of the MAR for all of Sprinkle's medications during his stay at DWCC. Sprinkle also submits an affidavit from another inmate, S. McDaniel, stating that McDaniel witnessed nurses at times giving Sprinkle the wrong medication at pill call and witnessed Sprinkle suffering from inadequate pain relief at DWCC.[14] (Dkt. No. 33, Attach. 1.)

## II. Discussion

### A. Summary Judgment

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56( c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue

---

December 2008 indicate that Dr. Ohai based this medication change on the fact that Sprinkle's kidney cysts had shown no significant change over two years and his diagnosis that Sprinkle had no current medical indication for Lortab therapy. Dr. Ohai's initial evaluation notes on Sprinkle state "probability that [Sprinkle] abuses pain medication is high considering that he describes allergies to" numerous other pain medications. The court denied Sprinkle's attempt to amend this action to add claims or defendants to this civil action regarding his medical treatment by other defendants at another prison facility.

[14] Grievance responses from March 2008 that Sprinkle submits indicate that at times, nurses dispensing medication would inadvertently pick up another inmate's medication dosing cup and hand it to Sprinkle. Sprinkle insists that these errors occurred because LPNs (Downes and Hardy) were poorly trained. The head nurse at DWCC addressed this problem in March 2008 by requiring nurses to show Sprinkle his medication before crushing it and dispensing it to him.

of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A verified complaint or other submissions filed by a pro se prisoner are to be considered as affidavits and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Although the court must view the evidence in the light most favorable to the nonmovant, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (quotation omitted).

The United States Supreme Court has held that punishments or prison conditions are "repugnant to the Eighth Amendment" if they "are incompatible with "the evolving standards of decency that mark the progress of a maturing society . . . or . . . involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted). To prove that medical treatment he received while a prisoner amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Id. at 104-105. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106.

First, the prisoner must demonstrate a medical need serious enough to give rise to a constitutional claim. "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291

(4th Cir. 1974) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and that he disregarded the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990).

**1. Dr. Cypress**

Sprinkle alleges generally that although Dr. Cypress knew he suffered from chronic pain as a result of his fused ankle and kidney disease, the doctor did not prescribe an adequate dose of Lortab to control Sprinkle's pain. He also alleges that the doctor knew that Sprinkle sometimes went up to twelve hours between receiving his scheduled dose of pain medication or received an incorrect dose or another medication, but the doctor did nothing to correct these problems. When Sprinkle complained to Dr. Cypress about not getting enough pain relief after DWCC's change to three pill calls per day instead of four, the doctor allegedly said to Sprinkle, "You may need an increase, but you'll never get it from me." Ultimately, Sprinkle asserts, the inadequate pain medication he received while under Dr. Cypress' care caused his polycystic kidney disease and ischemic brain disease to grow worse.

In the face of defendants' motion, affidavits, and other documentation, Sprinkle fails to forecast evidence on which he could prove that Dr. Cypress acted with deliberate indifference to his medical needs as alleged. First, Sprinkle does not have a constitutional right to the prescribed dose or schedule of pain medication he desires or that another doctor, at another time and place, provided to him. Estelle, 429 U.S. at 107. Dr. Cypress provides specific evidence that he monitored Sprinkle's pain control and made treatment decisions and adjustments, according to his best medical judgment, based on his observations, the observations of others, medical test results, and recommendations from the specialist. In making these decisions, he also weighed the side effects of the medication and the nonmedical motivations that he believed contributed to

Sprinkle's demands for pain medication, as well as his recognition of Sprinkle's serious medical conditions. When DWCC administrators changed the pill call schedule, Dr. Cypress adjusted Sprinkle's dosage so as to provide equivalent pain relief, according to his medical judgment. Sprinkle fails to forecast evidence on which he could persuade a fact finder that Dr. Cypress knowingly gave him less pain medication that the doctor believed was medically warranted.

Second, Sprinkle's own exhibits, along with the defendants' evidence, disprove his assertion that lack of adequate pain control caused his kidney and brain conditions to worsen. In fact, imaging studies of his kidney and his brain in 2008 showed no significant difference in the size of the cysts or the ischemic brain disease development over similar studies conducted in 2006, before Sprinkle's transfer to DWCC.

Third, Sprinkle fails to allege facts on which he could hold Dr. Cypress liable under § 1983 for the alleged problems with medication delivery. The doctor offers evidence that while he bears responsibility for writing a prescription for the patient, the nursing staff and not the physician are responsible for ordering the prescription, including refills, obtaining the medication from the pharmacy, and dispensing it to the patient at the intervals and in the dosage prescribed.

As Sprinkle fails to present any genuine issue of material fact in dispute for trial, the court concludes that Dr. Cypress is entitled to judgment as a matter of law. His motion for summary judgment will be granted.

### 2. Nurse Downes

Sprinkle complains that on "numerous" occasions, DWCC nurses gave him inadequate doses of his medication or even the wrong medication. In support of this assertion, he alleges that on March 25, 2008, Nurse Downes brought his medication in a cup, only partially crushed, so that he could see that it was the wrong medicine. When he complained, Nurse Downes brought him another cup of medication. He also alleges that the dosages could not have been right, based on the level of pain relief he achieved, and that he did not receive several doses at all. He alleges that the "pill charts" will reflect these problems. Based on his review of his pill

charts and the frequency at which his Lortab medication had to be reordered, Sprinkle also alleges that some of his medication was stolen.[15] He also complains about waiting eight to twelve hours for his pain medication and, on October 29-30, 2007, waiting 24 hours, after his prescription had to be renewed and received from the pharmacy.

In the face of defendants' evidence, Sprinkle fails to establish how he could prove that Nurse Downes acted with deliberate indifference to his medical needs as alleged. He offers nothing to contradict defendants' evidence that Nurse Downes had not yet begun to work at DWCC in October 2007, when his Lortab medication was delayed for a day after the prescription ran out. Likewise, he does not attempt to counter Nurse Downes' affidavit, stating that as a night shift nurse, she did not typically relay a doctor's renewal of medication to the pharmacy or do any pill calls. Nurse Downes also states that when she was assigned to distribute medication, she "always gave Mr. Sprinkle his medication as prescribed unless he refused the medication or was out for an outside medical appointment or for some other reason did not come to the central pill window . . ." to receive his medication as required.

Finally, according to defendants' evidence, Nurse Downes' initials do not appear on Sprinkle's MAR for March 25, 2008, and the controlled medication count sheet indicates that he received his Lortab as prescribed that day, with the correct number of tablets thereafter remaining. The MAR to which he refers, at the most, indicates that at times, nurses did not note on the chart that he received his medication at pill call. The charts alone do not prove that Nurse Downes stole, altered, or delayed his medication as he alleges. As Sprinkle fails to present any genuine issue of material fact in dispute as to his claims against Nurse Downes, the court concludes that she is entitled to judgment as a matter of law. Her motion for summary judgment will be granted.

---

[15] Sprinkle alleges that Nurse Downes is a likely candidate for stealing his medication because she admitted to him once that she had taken Lortab for back pain.

### 3. Nurse Hardy

Sprinkle makes very few specific allegations against Nurse Hardy. He includes her in the list of nurses who allegedly delayed bringing his medication, allowed his medication to run out on October 29-30, 2007, gave him improper doses or different medication, or according to pill charts, stole his medication. He alleges that on March 26, 2008, Nurse Hardy gave him only half his Lortab prescription and that this was not the first time she had given him an improper amount of the medication. He believes she stole the remaining tablet prescribed to him.

The court previously concluded that taking Sprinkle's allegations as true, the claims against Nurse Hardy survived the required screening under 28 U.S.C. § 1915A(b)(1). As he is proceeding in forma pauperis in this action, however, his complaint is subject to summary dismissal "at any time" if the court determines that he fails to state any actionable claim. See 28 U.S.C. § 1915(e)(2)(B)(ii). The record now before the court includes additional evidence of the prison's procedures and documentation of the extensive medical treatment provided to Sprinkle at DWCC. In light of the careful tracking procedures for controlled substances and the MAR now in the record, Sprinkle's vague allegations cannot suffice to state an actionable claim that Nurse Hardy stole his Lortab medication or routinely refused to provide his dose at each pill call to which she was assigned. Indeed, he does not allege seeing her "steal" any tablets of Lortab. He merely infers this action from his interpretation of the pill charts and perhaps from his perceived level of pain relief.

Sprinkle's exhibits include numerous informal complaints, asserting to prison officials his claim that the pill charts proved nurses were stealing his medication or giving him alternative medication. The grievance responses indicate that when nurses checked the MAR and the count sheet for Lortab as a controlled medication, the two counts matched up. The MAR attached to the defendants' motion for summary judgment, covering from January 7, 2007 through November, 2008, shows only a few, isolated blank squares for individual doses of Sprinkle's Lortab prescription for pain control. An occasional blank square on the MAR does not, by itself,

prove that any nurse, including the named defendant nurses, knowingly deprived Sprinkle of a dose of medication at that pill call. Moreover, the blank squares do not prove which nurse or LPN was on duty at that pill call. Thus, no reasonable juror could find from these charts alone such an ongoing pattern of missed doses as to constitute "wanton infliction of pain," as required to state an Eighth Amendment claim against anyone. Estelle, 429 U.S. at 102.

It is also clear from documentation now in the record that much of Sprinkle's dissatisfaction over the length of time between his Lortab doses stems from an administrative decision to change the pill call schedule for security reasons, a change for which the nursing staff had no responsibility. Similarly, the nurses had no responsibility for changes Dr. Cypress made to the prescription as a result of the pill call schedule change, directing that Sprinkle should receive one and a half tablets of Lortab at the morning and evening pill calls and one tablet at the noon pill call. See Miltier, 896 F.2d at 855 (noting that prison staff may rely on medical professional for appropriate course of medical treatment). Until Dr. Cypress also prescribed Tylenol for break through pain in the evenings, the nurses could give Sprinkle pain medication only at scheduled pill calls and were not deliberately delaying his pain relief when they did so.

Finally, in the face of the record as a whole, Sprinkle's allegations do not support a claim that Nurse Hardy wantonly handled his medication so as to inflict unnecessary pain on him. On the contrary, the record indicates that nurses routinely complied with and charted every dose of many medications provided to Sprinkle every day at DWCC. Their notes indicate that they recorded his repeated verbal complaints and relayed information to the doctor and the specialist. If occasionally, they did not deliver a dose of medication as promptly as scheduled, brought a slightly incorrect dose, or allowed the prescription to run out, such isolated incidents, without more, support at most a claim of negligence, which is not actionable under § 1983. Estelle, 429 U.S. at 105-06. Sprinkle himself alleges that the longest he went without pain medication, even when the prescription ran out, was 24 hours. While he might be able to persuade a fact finder that he suffered from a temporary decrease in pain relief in such circumstances, he cannot

demonstrate any long term or life threatening harm that resulted from these brief delays. The record now includes imaging test results from 2006 and 2008, which indicate that Sprinkle's polycystic kidney disease and ischemic brain disease did not worsen during his stay at DWCC.[16]

In short, the court is satisfied, given the record and Sprinkle's allegations and exhibits, that he cannot prove facts consistent with his allegations that Nurse Hardy acted with deliberate indifference to his serious medical needs. At most, his allegation that this individual stole his medication is speculative and is, therefore, properly dismissed at this stage of the litigation. Twombly, 550 U.S. at 555. Therefore, the court will summarily dismiss the claims against her without prejudice, pursuant to § 1915(e)(2)(B)(ii).

## Conclusion

For the stated reasons, the court concludes that the motion for summary judgment filed by Defendants Cypress and Downes must be granted, and all claims against Nurse Hardy must be dismissed without prejudice, pursuant to § 1915(e)(2)(B)(ii).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendant.

ENTER: This 30th day of December, 2009.

*[signature]*
United States District Judge

---

[16] The record also includes evidence that Dr. Cypress and Dr. Ohai did not believe Sprinkle had a medical need for as much pain medication as he received at DWCC.